Eric David SEALES, Plaintiff,

v.

MACOMB COUNTY and Frederick True, Jason Stabley, Ted Stabley, Robert Whitehead, Jim Hill and Ron Gekiere, **individually and in their official capacity**, Defendants.

No. 03–40336.

United States District Court, E.D. Michigan, Southern Division.

March 22, 2005.

Gordana Misovski, Brian M. Legghio Assoc., Mt. Clemens, MI, Hugh M. Davis, Jr., Cynthia Heenan, Constitutional Litigation Associates, Detroit, MI, for Plaintiff.

Frank W. Brochert, Plunkett & Cooney, Bloomfield Hills, MI, Albert B. Addis, Timothy S. Groustra, Albert B. Addis Assoc., Mt. Clemens, MI, Christina A. Ginter, Kitch, Drutchas, Detroit, MI, for Defendant.

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL AND PROTECTIVE ORDER [1]

WHALEN, United States Magistrate Judge.

Before the Court is Plaintiff's Motion to Compel Discovery filed 12/17/04 [Docket # 24]. For the reasons set forth below, IT IS HEREBY ORDERED as follows:

1. Plaintiff's request for information pertaining to Macomb County Youth Home residents residing in the same unit on the day of Plaintiff's alleged assault is GRANTED only to the extent that Defendant produce any and all notes, reports or memoranda in the possession of the Youth Home of the juveniles who were interviewed by Macomb County Youth Home personnel, or police or prosecutor's office personnel, as eyewitnesses to Defendants' alleged August 1, 2001 assault of Plaintiff.[2] The names of residents and/or former residents and the names of their parents or guardians, along with their social security numbers and any other contact information, shall be redacted from information provided to Plaintiff.

2. Plaintiff's additional request for identity and contact information for *all* Macomb County Youth Home residents residing in the same unit on the day of Plaintiff's alleged assault is DENIED.

3. Plaintiff's request that Defendants be compelled to identify and provide contact information for other Macomb County Youth Home residents and /or former residents who have filed grievances alleging physical mistreatment by Youth Home personnel is DENIED. However, Defendant shall provide Plaintiff with copies of all grievances or written complaints alleging physical misconduct by staff members filed by residents and/or former residents of the Macomb County Youth Home between August 2, 1998 and December 23, 2003, redacted as to all identifying information, including the names, addresses and contact information of residents' and former residents' parents.

4. Plaintiff's request for an unredacted copy of the complaint filed by a Youth Home resident which resulted in the dismissal of Macomb County Youth Home employee, Fred True is DENIED.[3]

5. Plaintiff's request for a list of Youth Home Residents who were placed in the "restraint chair" is GRANTED IN PART. Defendants shall provide Plaintiff with the portion of the files of all Macomb County Youth Home residents placed in the "restraint chair," between August 2, 1998 and December 23, 2003, describing the reasons for discipline, the time spent in the chair, and any notes pertaining to the incident, redacted as to all identifying information, including the names, addresses and contact information of residents' and former residents' parents.

6. Plaintiff's request to produce contact information for residents or former residents identified in anonymous phone calls to Plaintiff or Plaintiff's lawyer is DENIED.

---

1. The Court acknowledges the significant contributions of Law Clerk Amy J. Humphreys to the preparation of this Opinion and Order.

2. Defendant shall produce all information compelled, subject to a protective order, the limits of which are set out in this Court's August 12, 2004 *Order Granting Motion to Compel and Protective Order* [Doc # 22].

3. This order does not reference every discovery requests made by Plaintiff in his *Motion to Compel* [Doc # 24]. Rather, the Court addresses only those issues raised in Plaintiff's subsequent pleading, *Joint List of Unresolved Issues*, submitted February 3, 2005 [Doc # 34] and in the Motion Hearing, held February 10, 2005 (*See Transcript*, [Doc # 37]).

7. Plaintiff's request for identities and contact information for individuals mentioned in state reports of physical mistreatment is DENIED.

## I. BACKGROUND FACTS

Plaintiff Eric David Seales brings this action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his civil rights through excessive and unjustified use of force; conspiracy; a policy, practice or procedure of failing to supervise employees; retaliation; and malicious prosecution. *Complaint* at ¶¶ 36–55. Plaintiff alleges that on August 1, 2001, during his residency at the Macomb County Juvenile Youth Home [4], Defendants Fred True, Jason Stabley, Robert Whitehead, and Ted Stabley, Youth Home employees, assaulted him after he engaged in a verbal altercation with another resident. *Complaint* at ¶¶ 15–30. Plaintiff alleges that Defendants beat him, choked him until he lost consciousness, and improperly placed him in a restraint chair for approximately four hours. *Id.*

As a result of the incident, Plaintiff was charged with assault and battery. A jury acquitted Plaintiff of all criminal charges in April, 2002 [5]. *Id.* at ¶¶ 31–32. In the present action, Plaintiff seeks compensatory and punitive damages, along with attorney's fees.

## II. STANDARD OF REVIEW

Under Fed.R.Civ.P. 26(b), the scope of discovery is quite broad. *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir.1998). "The scope of examination permitted under Rule 26(b) is broader than that permitted at trial. The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." *Id.*, quoting *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 501 (6th Cir.1970). Rule 26(b)(1) also provides that "[a]ll discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii)". Those subrules provide:

"The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit...."

Under Rule 26(c), the Court may enter a protective order to limit or preclude discovery, with reference to the Rule 26(b) factors.

█ It is well established that "the scope of discovery is within the sound discretion of the trial court." *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir.1993); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir.1981).

## III. ANALYSIS

█ In response to Plaintiff's motion to compel, Defendants argue that state confidentiality statutes regarding juvenile records preclude the usual, broad application of Rule 26(b). The Child Care Organizations Act of 1973, M.C.L. § 722.120(2); M.S.A. § 25.358(20)(2), states in pertinent part:

"Except as otherwise provided in this subsection, records regarding children and facts compiled about children and their parents and relatives are confidential and disclosure of this information shall be properly safeguarded by the child care organization, the department and any other entity in possession of the information."

A 1991 Michigan Attorney General's Opinion, which withheld access to confidential youth records from agencies hired to place children in foster homes, found that any exception to the statutory requirement of confidentiality should be narrowly construed. "[S]tatutory exemptions and exceptions are to be carefully scrutinized and may not be

---

4. Now known as the "Macomb County Juvenile Justice Center."

5. The Honorable William Crouchman presided in *People v. Eric Seales*, 41B District court Case No. 01–3312.

extended beyond their plain meaning." 1991 *Mich. AG* LEXIS 12, 6 (Mich.AG,1991). *See also Northville Coach Line, Inc. v. Detroit,* 379 Mich. 317, 150 N.W.2d 772 (1967). Noting that the Legislature underscored the need for confidentiality by imposing criminal and civil penalties for violations of the statute, the Attorney General stated that "the Legislature has expressed its intent that the records contained in the central registry are, with only very specific and limited exceptions, to be kept strictly confidential." *Id.* at 5.

Further, Michigan's Youth Rehabilitation Services Act, M.C.L. § 803.308; M.S.A. § 24.399(58), specifically protects the identity and records of juvenile youth home residents:

> "All records of a youth agency pertaining to a public ward are confidential and shall not be made public except as follows: (a) If the person is less than 18 years of age, by the agency's authorization when necessary for the person's best interests. (b) If the person is 18 years of age or older, by his or her consent."

A 1979 Michigan Attorney General's Opinion also stressed the importance of maintaining the confidentiality of youth records, stating that although "Youth Parole and Review Board proceedings fall within the Open Meetings Act," the Act provided that the confidentiality of individual juveniles must be maintained:

> "In those situations where the Youth Parole and Review Board is discussing or adjudicating matters pertaining to a specific state ward, § 8 of the Youth Rehabilitation Services Act, 1974 PA 150; MCLA 803.308; MSA 24.399(58) must be observed." 1979 *Mich. AG* LEXIS 185, 4–5 (Mich.AG, 1979).[6]

Neither of the above Michigan statutes requiring confidentiality state explicitly that the youth records are privileged. Nor is there Michigan case law holding that the statutes create an evidentiary privilege. Statutory provisions providing for duties of confidentiality do not automatically imply the creation of evidentiary privileges binding on courts. "Merely asserting that a state statute declares that the records in question are confidential does not make out a sufficient claim that the records are privileged within the meaning of Fed.R.Civ.P. 26(b)(1) and Fed R. Evid. 501." *Martin v. Lamb,* 122 F.R.D. 143, 146 (W.D.N.Y.1988). *See also Nguyen Da Yen v. Kissinger,* 528 F.2d 1194, 1205 (9th Cir.1975) ("The records are confidential but not privileged"). Given the absence of any express statutory language or judicial interpretation creating an evidentiary privilege, this Court declines to read one into the above confidentiality statutes.

Furthermore, even if the Youth Home records were considered privileged, as opposed to merely confidential, this Court is not bound by a state statutory privilege not also found in federal statutes or common law. *Pearson v. Miller,* 211 F.3d 57, 61 (3rd Cir. 2000). *See also Hancock v. Dodson,* 958 F.2d 1367, 1373 (6th Cir.1992). Generally, under Fed.R.Ev. 501, federal courts are bound only by privileges currently recognized by federal law.[7] *Pearson* at 66. However, the Senate Report accompanying the adoption of Rule 501 "should be understood as reflecting the view that the recognition of a privilege based on a confidential relationship ... should be determined on a case-by-case basis." *Jaffee v. Redmond* 518 U.S. 1, 8, 116 S.Ct. 1923, 1927, 135 L.Ed.2d 337 (1996); S.Rep. No. 93–1277, p. 13, U.S.Code Cong. & Admin.News 1974, pp. 7051, 7059.

---

**6.** As of the filing of this Opinion, no Michigan or Federal Court had commented on either M.C.L. § 722.120(2); M.S.A. § 25.358(20)(2) or M.C.L. § 803.308; M.S.A. § 24.399(58).

**7.** Fed.R.Ev. 501 states: "Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law." Thus, where, as here, the claim is grounded in federal law, federal, not state privileges apply. *Pearson* at 66.

Nonetheless, "[f]ederal courts have generally declined to grant requests for new privileges." *Pearson,* 211 F.3d at 67. *See, e.g., University of Pennsylvania v. EEOC,* 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990); *U.S. v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974) (privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth"). Indeed, this Court is aware of only one district court that adopted state law recognizing that juvenile records are protected by privilege.[8]

There is nothing about the Michigan confidentiality statutes, either on their face or in the context of the facts of this case, which would commend elevating them to the status of a federal evidentiary privilege. Indeed, Defendants, somewhat ironically, appear to invoke the state laws designed to protect juveniles, to protect themselves from possible liability as a result of their alleged mistreatment of wards. " '[T]here is a "special danger" in permitting state governments to define the scope of their own privilege when the misconduct of their agents is alleged.' " *Pearson,* 211 F.3d at 68, quoting *ACLU v. Finch,* 638 F.2d 1336, 1344 (5th Cir.1981). *See also Longenbach v. McGonigle,* 750 F.Supp. 178, 180–81 (E.D.Pa.1990) ("Nor does it make any sense to allow the state, under whose color of authority officers have allegedly violated rights, to limit unilaterally the availability of evidence.")

This Court therefore finds that the information sought from the Macomb County Youth Home is not protected from discovery by federal privilege. That being the case, the Michigan confidentiality statutes on which Defendant relies do not have controlling weight, and the discoverability of the information is governed instead by the general principles set forth in Fed.R.Civ.P. 26(b). However, the state confidentiality statutes should be allotted *some* weight,

along with other factors in deciding which materials should be discoverable. In *Pearson,* 211 F.3d at 73, the court criticized the district court's decision limiting discovery "in accordance" with the state statute, but acknowledged that "[c]onsiderations of comity require that we at least consider these 'privileges,' as well as the confidentiality interests otherwise protected...." Thus, the public policy of shielding youth records from disclosure must be weighed against Plaintiff's need for information.

## A. Eyewitnesses

### 1. The Three Known Witnesses

■ Plaintiff first requests contact information for the three known individuals who witnessed his alleged beating. Plaintiff requests current or last known addresses, as well as contact information for witnesses' parents, including Social Security numbers, the names of parents' employers, and all known telephone numbers. Plaintiff acknowledges that two of the three known eyewitnesses testified on his behalf at his criminal trial, but he has since lost contact with them.

Although Plaintiff argues that the two eyewitnesses who testified at Plaintiff's criminal trial have waived any privilege, this Court will not compel Defendant to release all contact information in its file pertaining to the known witnesses and their parents, for the reason that Plaintiff has not demonstrated that such information cannot be or could not have been obtained through other means. Plaintiff asserted at the hearing that "[Defendants] have much better information that we don't have access to any other way," but failed to show that he had made any significant effort to obtain the information through his own investigation using alternative means, such as employing a private investigator or taking out a newspaper advertisement.[9] *Hearing Transcript* of 2–10–05, at

8. *Farley v. Farley,* 952 F.Supp. 1232 (M.D.Tenn. 1997).

9. While public newspaper posting might ordinarily seem to be a long shot, it should be noted that the Macomb County Youth Home has been the subject of frequent and intense media scrutiny dating back at least ten years. *See, e.g., Detroit Free Press,* March 4, 1995, pg. 1A ("Killer

Had Run of Youth Home Drugs, Beer, Porn at Macomb Facility"); *Free Press,* August 19, 2003 ("Youth Home Changes Demanded," describing verbal and physical abuse at the Youth Home found by Michigan Department of Consumer and Industry Services); *Associated Press State and Local Wire,* December 25, 2003 (discussing the present lawsuit); *Free Press,* March 11, 2005

35. Fed R. Civ. P. 26(b)(2)(i) states that the court may limit discovery requests on basis that "the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive." In this case, the burden to a third party individual with confidentiality rights under state law outweighs Plaintiff's need for disclosure of information that could be obtained through another source. This is especially true given that the three known witnesses were within the Plaintiff's grasp at the time of the criminal trial.[10] Plaintiff had current contact information for these individuals at that time, both through his own investigation and likely through criminal discovery under M.C.R. 6.201(A).[11] Thus, the information was "obtainable from some other source," Rule 26(b)(2)(i), and Plaintiff has had ample opportunity to obtain the information, Rule 26(b)(2)(ii).

The Court is particularly concerned about the request for Social Security numbers and employment information on the youths' parents. Plaintiff already has (or should have) the last known addresses of the three known witnesses, and in effect, he is seeking not true discovery, but rather an investigative lead. On balance, the need for confidentiality outweighs the Plaintiff's need for the requested information as to these three witnesses.

#### 2. Other Possible Eyewitnesses

■ Plaintiff also requests names and contact information for all Youth Home residents who resided in his unit on the same day of the alleged assault, and would therefore potentially be witnesses with relevant information.

Unlike the three witnesses discussed above, Plaintiff would not necessarily have any information or knowledge about even the existence of witnesses who were not available at the time of the criminal trial. M.C.R. 6.201(A) mandates only disclosure of witnesses the prosecution intends to call at trial.

If there are witnesses who provided *relevant* information to either the police, prosecutors or Youth Home personnel, but were not previously disclosed, Plaintiff's right to discovery of that information would outweigh any confidentiality interests flowing from the Michigan statutes. However, Plaintiff must first show, beyond conjecture and speculation, that the information he seeks is relevant. The scope of the discovery he seeks—names and contact information of all residents who might possibly have been in a position to witness some part of the events at issue—is too broad.

Again balancing the confidentiality interest of the residents against the Plaintiff's need for relevant discovery, the appropriate remedy is to order the Defendant to disclose any reports, notes or memoranda in its possession regarding interviews of residents about the incident in question by Youth Home personnel, police or prosecutors. Any such documents will at this time be redacted to exclude identifying information such as names, addresses, and Social Security numbers. In this way, the confidentiality interests of residents who were in Plaintiff's unit but saw nothing will be protected, and at the same time Plaintiff will be informed of the content of any interview which might contain relevant information. If such information in fact exists, Plaintiff would then be in a position to substantiate a request for disclosure of identifying information.

#### B. The Identity of Other Residents of Youth Home

■ Likewise, Defendants shall provide Plaintiff with copies of all complaints and grievances alleging physical misconduct by staff members filed by residents of the Macomb County Youth Home between August 2, 1998 and December 23, 2003, redacted at this time as to all identifying information, including the names, addresses and contact information of residents' and former resi-

---

("County Delays Picking Head of Juvenile Center"). At the hearing, Plaintiff's attorney admitted that "[a] number of people have come forward voluntarily." *Transcript of 2–10–5*, at 13.

10. Plaintiff even has the recorded testimony of the two witnesses who testified in his behalf.

11. MCR 6.201(A) states, "In addition to disclosures required by provisions of law other than MCL 767.94a; MSA 28.1023(194a), a party upon request must provide all other parties: (1) the names and addresses of all lay and expert witnesses whom the party intends to call at trial."

dents' parents. This information is clearly relevant "to the claims or defenses" of the parties, within the meaning of Rule 26(b). In addition, Defendants shall provide Plaintiff with the portion of the personal files of all Youth Home residents placed in the "restraint chair," between August 2, 1998 and December 23, 2003, describing the reasons for discipline, the time spent in the chair, and any other documentation pertaining to the incident, redacted at this time as to all identifying information, including the names, addresses and contact information of residents' and former residents' parents. Plaintiff's request for unredacted copies of state reports documenting Youth Home abuses for the purpose obtaining the identities and contact information for individuals mentioned in the report is denied for the reasons set out in section **A.**

Plaintiff's request for the contact information for residents or former residents identified in anonymous phone calls to Plaintiff or Plaintiff's lawyer is denied for the reasons stated on the record on February 10, 2005.

This Court notes that Plaintiff's motion, submitted primarily to obtain the identity of potential witnesses, has been denied in part based on his failure to establish a need to obtain information in the manner sought which overrides the confidentiality interests of the individuals in question. However, this Court will consider future requests for such information if Plaintiff can establish a need that overrides such interests. "It is well-established that a district court retains the power to modify or lift confidentiality orders that it has entered." *Lawrence v. Van Aken,* 2004 WL 228989, *8 (W.D.Mich.,2004); *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 784 (3d Cir.1994).

### IV. CONCLUSION

Plaintiff's Motion to Compel Discovery [Docket # 24] is GRANTED IN PART AND DENIED IN PART. Defendant shall provide discovery as set forth herein within 14 days of the date of this Opinion and Order.

SO ORDERED.